## No. 3504.

## M. Musson & Co. vs. A. Foster Elliott.

Where cotton is nominally sold for cash, but the price is not paid on delivery of the cotton, and the vendor receives on the following day a part of the price, and accepts security for the balance, he thereby waives any privilege he may have as vendor, and is estopped from sequestering the cotton in the hands of a subsequent *bona fide* vendee, or pledgee of the cotton.

APPEAL from the Seventh District Court, parish of Orleans. *Collens, J.*

*Clarke, Bayne & Renshaw* for plaintiffs and appellants.

*E. W. Huntington* for defendant and appellee.

The opinion of the court was delivered by

Manning, C. J. The plaintiffs sold one hundred and eighty-nine bales of cotton to Nevins & Co., the weighing and delivery thereof being

completed on 21st. of December 1869. It was a cash sale, and the full amount was $21,371.76 Nevins did not pay cash as agreed on. The plaintiffs demanded it on the 21st., and throughout that day and the next were importunate, and threatened seizure of the cotton. Shortly before 3 o'clock on the 22nd they were paid $15,741. by Hopkins the agent of Nevins & Co. who thus details the manner of payment ;— " at the urgent solicitation of Mr. Musson and to stop sequestration of the cotton, and interference with the regular course of the shipment, holding Mr. Nevins' procuration, I drew the bills of exchange sold to Mr. Elliott, and on handing them to him with the shipping document annexed, I received from Mr. Elliott a cheque for the balance due, five thousand dollars having been previously paid on account. The cheque was drawn to order of Nevins & Co., was endorsed by me as *per pro.* and handed by me to Mr. Musson immediately in the office of Elliott. Afterwards, and in order to satisfy Mr. Musson for the balance, we handed him also bills of lading, two series, as security or until Mr. Nevins was able to come out and make a final settlement with him."

The payment of five thousand dollars, of which Hopkins speaks, was an advance of that sum made by Elliott to Nevins on the 17th. or 18th. of same month, and is claimed by the defendant to have been made on this purchsae, which was made at that date, though the weighing and delivery had not been completed until later. The plaintiffs deny that this advance or loan to Nevins had any special reference to this purchase, or if it had, that it could affect them. Musson & Co. allege that the residue of the price, viz $5,630.76 was never paid, and on the 27th. of December they instituted this suit, and, sequestrated the cotton, which was then on board the ship in this port.

The cotton was released on bond, and early in January following, the defendant moved rules to quash the sequestration on the grounds that the affidavit did not state when the cotton was delivered to Nevins & Co., nor that it was an agricultural product of the United States, and that the privilege of plaintiffs was prescribed by the lapse of five days from the delivery of the cotton to Nevins, and was barred by want of registry, and that the cotton was in Elliott's possession at the time of seizure by transfer and sale from Nevins. It was agreed that the merits should be tried under these rules, and there was judgment for defendant.

The facts as disclosed in the evidence are, that the cotton was sold on the 17th. Dec. and the terms were cash. On the 18th. Nevins & Co. obtained from Elliott a promise to cash their sterling exchange to the amount of $20,741. and received $5,000 of that sum then, giving a receipt in the form of a pledge. The exchange was to be drawn against about two hundred bales of cotton. The cotton sold by the plaintiffs

(189 bales) was weighed and delivered on 21st. We have already stated the occurrences of the following days.

We do not find it necessary to decide whether the seizure was within the five days, designated by the act of 1855 as the time within which the vendor of 'agricultural products of the United States' shall be entitled to enforce his lien by seizure, nor whether the lien and privilege upon movables, such as bales of cotton, needs to be recorded to ensure its preservation to the vendor.

It is abundantly shewn that the sale of the cotton, made on the 17th., was perfected by the weighing and delivery on the 21st., and that the purchaser Nevins did not comply with the terms of sale, and that Elliott was fully aware of it. The plaintiffs made ineffectual efforts to obtain Nevins' compliance with the terms of sale on the 21st. He had been taken ill, and was not to be seen. These efforts were renewed on the 22nd, when Elliott gave to Nevins' agent the cheque for $15,741. in Musson's presence, to whom it was immediately transferred. The bills of lading for the cotton were at that moment in Elliott's possession to Musson's knowledge, and it was equally well known to him that the money was paid by Elliott because he held the bills. The money would not have been paid without them, says Hopkins. Musson said this was only a part of the price. There was a balance of over five thousand dollars. He demanded all of it. Elliott said it was all he owed Nevins, and would pay no more. Nevins was so ill as to create alarm, and time pressed. Then Hopkins bethought himself of satisfying Mr. Musson's demand by placing collateral with him. Nevins had two bills of lading for nineteen bales and thirty bales respectively, already on shipboard—on a different ship from that carrying the 189 bales—and he handed them to Mr. Musson as security, or until Nevins could come out and make a final settlement.

Musson took them—received them from Nevins as security for the unpaid portion of the price on the same day, and shortly after he had received from Elliott over fifteen thousand dollars, made on the faith of the bill of lading of the cotton he had sold to Nevins. He supposed forty-nine bales would yield about five thousand dollars, and so they would, had cotton preserved the prices then obtaining. Speaking as a witness, he says ;—my dissatisfaction in not receiving full payment was expressed to Mr. Hopkins since the 21st, and when receiving the money due on account. The expectation of the balance being paid to me the next morning was one inducement to delay collection of the balance until then, when Mr. Nevins was expected to come to his office. I was handed by Mr. Hopkins bills lading to order but not endorsed for nineteen bales and thirty bales cotton on board the "Gardner Colly" which were worth, he supposed, in round numbers five thousand dollars.

But Mr. Nevins came to his office no more. He died early on the 23rd, and his death changed the whole aspect of the affair. The nineteen bales sold in England for only $1200 nett, and the unpaid vendor of the thirty bales seized them and there is a suit over the proceeds, so that the expedient devised by Hopkins to cover the deficiency of Nevins' payment was ineffectual, and Mr. Musson precluded himself, or his firm, from proceeding against the cotton bought by Elliott from Nevins to compel the payment of that deficiency. Whatever rights he may have had as vendor were waived by his actions on the 22nd, and he is estopped from subjecting the cotton to his demand under the circumstances appearing in the evidence, about which there is no dispute. The case in many features resembles Laughlin v. Ganahl, XI Rob. 140. No one has been at fault but the plaintiffs, and no one else should suffer for it. Lee v. Galbraith, 5 Annual, 343.

Judgment affirmed.

---

### CONCURRING OPINION.

SPENCER, J. I am not able to agree with the court in its reasons for judgment in this case.

Admitting that Musson received from Elliott the balance, $15,741, due by Elliott to Nevins & Co. on the purchase or transfer of bills· of lading of the cotton, and that he accepted from Nevins & Co.'s agent bills for forty-nine bales of cotton as collateral for the balance due Musson & Co., I am unable to infer from these facts that he renounced or waived the vendor's lien which he undoubtedly had on the cotton in Elliott's hands.

*Nemo præsumitur donare.* Renunciations are not to be presumed from acts done, unless those acts are inconsistent with the rights alleged to have been renounced.

Musson & Co. undoubtedly had a vendor's lien on the cotton for five days from its delivery. His vendee sold or pledged this cotton to Elliott. Musson threatened to seize the cotton under his privilege. Elliott very naturally sought to free the cotton from this undoubted claim, and paid, or caused to be paid, to Musson & Co. the balance of the price in his hands due to Nevins & Co ; and Musson just as naturally received the sum so offered, and, with equal good sense, accepted the bills for forty-nine bales tendered him as collateral by Nevins & Co. But I see in this no evidence of renunciation. On the contrary, it had the effect of reducing the debt of Musson and increasing his security. Because I accept from the vendee of my vendee what the former owes to the latter, as

Musson & Co. vs. Elliott.

the price of the sale between them, do I thereby relinquish my privi-lege on the property for any balance due me? Is such an act incon-sistent with an intent on my part to still look to the property for the balance due me? A sells to B a piece of land retaining the vendor's lien. B sells it to C. A threatens to seize for his money. C, having in hand a part of the price still due to B, hands it over to A, who receives it. This act would estop A from denying the sale from B to C, but not from asserting his privilege on the property, because the existence of that sale is not inconsistent with the existence of A's privilege. Nor was the acceptance of the bills for the forty-nine bales of cotton as collateral any waiver, renunciation, or estoppel, of the vendor's lien of Musson & Co. By taking additional security one does not lose or renounce the security he already has.

I think, however, that the plaintiffs, Musson & Co., have lost their recourse on this cotton in the hands of Elliott, by failure to assert their privilege *"within five days after the day of delivery."* The delivery was completed on the twenty-first. Excluding the twenty-first, the day of delivery, the five days elapsed at the close of the twenty-sixth. The sequestration was taken out on the twenty-seventh.

The general rule is that the vendor's privilege is defeated by sale of the movables subject to it—C. C. 3227—but, by exception, it continues for five days "after the day of delivery" in sales of agricultural prod-ucts. *Idem.* It is said, however, that this delay of five days is not a prescription, or subject to its rules. The Civil Code, after treating of the prescription relative to the acquisition of property, proceeds in articles 3528, 3529, *et seq.* to treat of the prescription which operates a release from debt. Art. 3529 says: "This prescription has also the effect of releasing the owner of an estate from every species of real rights to which the property may have been subject, if the person in possession of the right has not exercised it during the time required by law." Whilst this article was framed more particularly with reference to real estate, and real rights thereon, it serves to show that the effect of this prescription operates not only for the release of *persons* from *their obligations,* but also to extinguish incumbrances and obligations bearing *upon things.*

There was a vendor's lien in favor of Musson, bearing as an incum-brance on this cotton. The law declares that if the right to that privi-lege is not asserted within five days after the day of delivery it is lost, at least as against a third holder of the property. In other words, an action to enforce it is barred by lapse of time. The property is dis-charged from the lien, the incumbrance "by the effect of time," and this is prescription. C. C. 3420.

Article 3430 Civil Code declares that prescription is "acquired after

the last day allowed by law has elapsed." The twenty-sixth was the last day allowed by law for an action to enforce the plaintiff's privilege.

The Code of Practice treats in the main of the rules of procedure in courts of justice. We think the rule of art. 318 C. P. can not be extended to a case like this. It manifestly refers to mere matters of practice in the courts.

As I have said, I think the five days of art. 3227 C. C. constitute a prescription. As such it is not interrupted or suspended by the occurrence of *dies non.*

I therefore concur in the decree of the court in this case.